LIONEL TRADING CO., INC. *v.* UNITED STATES (No. 3979)[1]

United States Court of Customs and Patent Appeals, March 22, 1937

*Siegel & Mandell* for appellant.

*Joseph R. Jackson,* Assistant Attorney General (*Daniel I. Auster* and *John F. Kavanagh,* special attorneys, of counsel), for the United States.

*Pickrell & McDonald, amicus curiae.*

[Oral argument February 9, 1937, by Mr. Mandell, Mr. Pickrell, and Mr. Auster]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, which, in effect, affirmed the amounts of the

[1] T. D. 48900.

appraised values of certain importations of empty paper boxes and empty glass bottles, manufactured for and shipped by Parfums Corday of Paris, hereinafter called Corday, to its sole agent in the United States, the Lionel Trading Co., Inc., the appellant herein. As the case comes to us, it involves reappraisements 98102–A, 98175–A, and 98279–A, all being under the Tariff Act of 1930.

It is conceded that no foreign value, export value, or United States value exists for the merchandise, and that the proper basis for appraisement is the cost of production thereof, as defined by section 402 (f), Tariff Act of 1930, which reads:

SEC. 402.  VALUE.

    \*       \*       \*       \*       \*       \*      \*

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The merchandise involved was appraised at its invoiced and entered values plus 28 per centum. The addition of this item of 28 per centum to the entered values is the only matter in controversy here. It represents the amount added or charged by the exporter, Corday, which, according to the appellant, is—

a profit to cover the purchase of the imported merchandise and for permission on the part of the importer to have the sole use in the United States of the name "Corday" and to cover the permission to use the special designs in packing, etc., of perfumes and toilet articles which had through advertisements secured a world wide reputation.

The single judge sitting in reappraisement dismissed the appeals to reappraisement, holding that the importer had failed to sustain the burden of proving the dutiable value of the merchandise which was the cost of production. On appeal, the Customs Court modified the judgment of the single judge to make it read "the amounts of the appraised values are affirmed," and, as so modified, affirmed it.

In addition to portions of the record in *Lionel Trading Co., Inc.* v. *United States*, 21 C. C. P. A. (Customs) 362, T. D. 46889, which were incorporated into the instant record as Exhibit 1 therein, the record before us consists of the testimony of C. Lionel Marcus, Exhibits 2 to 6, inclusive, being affidavits of various French manufacturers of paper boxes and glass bottles, showing their respective costs of production, and Exhibit 7, being a special agent's report, under date of December 23, 1933.

Corday contracts with manufacturers, who may be designated as subcontractors, to make the boxes and bottles for it. Corday furnishes the designs which it owns and which are registered with the French Government. These designs are produced by Corday or are purchased outright from artists. Corday also owns and furnishes to the subcontractors the moulds used in making the bottles. The boxes and bottles are produced for the exclusive use of Corday, and those who make them cannot sell them to any other concern.

It is the contention of the appellant that since Corday does not make the merchandise itself but that it is made by others, and since the 28 per centum goes to Corday for the purposes heretofore mentioned, it is not a part of the actual cost of "manufacturing" or "producing" the goods, and that Corday is not the manufacturer.

The Government, on the other hand, contends that the cost of production shown in the affidavits admitted in evidence as Exhibits 2 to 6, inclusive, represents only the cost to certain subcontractors who made the merchandise in question expressly for Corday, which the Government terms "the real manufacturer and producer", and that Corday added the 28 per centum to the invoice prices to cover its overhead and profits, and that it was, therefore, a proper item to include in arriving at the "cost of production."

The single judge, sitting in reappraisement, in dismissing the appeals to reappraisement, said:

Hence, the record establishes that the costs of the French concerns which manufacture the boxes and bottles for Corday do not represent the entire cost of production of the articles in question at the time of their exportation to the United States. The costs incidental to the making of the designs and of the molds by Corday, together with the latter's overhead and profit, are essential factors which must enter into the total cost of production, and according to the uncontradicted evidence were properly to be considered as represented by the 28 per centum added by Corday to the prices paid by it to the several manufacturers, who were really subcontractors of the final manufacturer and producer. In other words, the cost of production for tariff purposes must necessarily be the cost to Corday of these boxes and bottles, and all the essential factors entering into said cost to Corday must be considered. The fact that the plaintiff herein failed to incorporate as part of the cost of production the items of expenses and profit added by Corday after the goods left the hands of the subcontractors is fatal to his case.

The appellate tribunal of the Customs Court in modifying and affirming the judgment of the single judge, said:

While it is true that the shipper does not do any of the actual manufacturing, nevertheless, the articles do not go into the market for sale until, bearing the shipper's name, they are consigned or offered or sold by him to his exclusive agent, the importer here.

We think, therefore, that Congress intended the shipper to be considered as the manufacturer in such circumstances where costs, etc., should be included in this statutory substitute for foreign value, when it is used to measure the ad valorem duty.

We are in agreement with the tribunal below in their holding that upon the record made, the said 28 per centum which was charged by Corday was, by the appraiser, properly added to the entered value to make up the cost of production which constituted the dutiable value. The record shows that the 28 per centum was added by Corday as profit and overhead. It seems obvious that a part of the cost of production of the bottles was in the making, producing, and furnishing the designs and moulds, and that a part of the cost of producing the boxes was the cost connected with the designs. These items clearly go into the cost of production of the merchandise under consideration. The term "in manufacturing or producing such or similar merchandise" in paragraph (1) of section 402 (f), *supra*, must be read in connection with the whole provision concerning cost of production.

As was suggested in the opinion by Judge Brown, speaking for the appellate division of the Customs Court, and as has been held by this court, the determination of the cost of production is an effort to arrive at a substitute for a foreign-market value. *United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, T. D. 46378. It is difficult to see how a purported cost of production which did not include essential elements of expenses for material and labor which went into the cost of producing the articles exported would properly reflect a substitute foreign market value therefor.

It is clear to us that in any event there could be no question as to the correctness of our conclusion as to the items of expenses connected with the designs and moulds. If there is any part of the 28 per centum which should not have been added (and we do not intimate that there is), the proof in the record does not show the amount of the same in relation to the whole 28 per centum. It would not be sufficient for appellant to show that there is some undetermined amount in the 28 per centum which should not have been charged. On appeal to reappraisement, it labored under the burden of showing not only that the appraisement was erroneous, but of proving the correct dutiable value.

The main contention of appellant is to the effect that Corday, to whom the 28 per centum went, part of which was profit, was not the actual *manufacturer* of the goods at bar and that, therefore, the said

28 per centum could not be included in the cost of production as that term is defined in said section 402 (f).

It must be remembered that paragraph (1) of said section 402 (f) refers to "in manufacturing or producing such or similar merchandise"; that paragraph (3) thereof refers to "all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States"; and that paragraph (4), referring to profits, contains the phrases "manufacturers or producers" and "manufacture or production."

We think that the merchandise was manufactured or produced by Corday within the meaning of the language used by Congress in said section 402 (f).

The judgment of the United States Customs Court is *affirmed*.